IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JEROME D. CLARK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 14-763 SLR |
| | ) | |
| ROBERT COUPE, PERRY PHELPS, | ) | |
| PHILIP MORGAN, KENNETH MCMILLAN, | ) | |
| PAMELA FAULKNER, ERICA N. JOHNSON | ) | |
| | ) | |
| Defendants. | ) | |

Jerome D. Clark, Howard R. Young Correctional Institution, Wilmington, Delaware. Pro se Plaintiff.

Ophelia M. Waters, Esquire, Deputy Attorney General, State of Delaware, Wilmington, Delaware. Counsel for Defendants.

**MEMORANDUM OPINION**

Dated: July 22, 2015
Wilmington, Delaware

**ROBINSON, District Judge**

## I. INTRODUCTION

Plaintiff Jerome D. Clark ("plaintiff"), an inmate at Howard R. Young Correctional Institution ("HRYCI"), filed this lawsuit pursuant to 42 U.S.C. § 1983, proceeding pro se. The court has jurisdiction pursuant to 28 U.S.C. § 1331.

Plaintiff alleges violations of his Fifth, Sixth, Eighth, and Fourteenth Amendment rights. (D.I. 23 at 18) He seeks $100,000 in compensatory damages and $100,000 in punitive damages from each defendant. (D.I. 2)

Presently before the court is defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), or in the alternative, for summary judgment pursuant to Fed. R. Civ. P. 56.[1] (D.I. 35) For the reasons discussed, the court will grant defendants' motion for summary judgment.

## II. BACKGROUND

Plaintiff is currently serving a two-year sentence following a conviction for attempted robbery on August 23, 2013. Plaintiff had previously been convicted of sexual assault, among other offenses, in 1983.

During a routine initial assessment on October 10, 2013, the Delaware Department of Correction ("DOC") classified plaintiff as a sex offender. (D.I. 23, ex.

---

[1] On December 8, 2014, plaintiff filed a motion for summary judgment. (D.I. 23) Instead of answering the motion, defendants filed their own motion to dismiss, or in the alternative, for summary judgment. (D.I. 35) Plaintiff then filed an answer (D.I. 38), and defendants replied (D.I. 39). The court now considers defendants' motion, granting plaintiff the benefit of the facts alleged in his original motion for summary judgment.

2) The Multi-Disciplinary Team/Institutional Classification Board ("MTD/ICB") recommended the minimum security level, as well as education, sex offender groups, and institutional jobs. (D.I. 23, ex. 2) Through multiple letters and grievances, plaintiff disputed the results of his classification assessment, claiming that he was not a sex offender. (D.I. 23, ex. 3, 5) On October 11, 2013, plaintiff allegedly wrote a letter to defendant Philip Morgan ("Morgan"), Warden, disputing his classification status. Plaintiff claims he received a response from defendant Pamela Faulkner ("Faulkner") stating that the re-classification was DOC policy. (D.I. 23 at 7) On October 18, 2013, plaintiff filed a grievance form along with a letter to defendant Perry Phelps ("Phelps"), Bureau Chief, and Phelps affirmed the classification. (D.I. 23, ex. 4) As a result of his classification status, plaintiff was required to participate in a treatment program with the Head Start Home and Transition Sex Offender groups, but he repeatedly refused to participate. (D.I. 23 at 8-11)

On March 21, 2014, defendant Kenneth McMillan ("McMillan"), Lieutenant, held a disciplinary hearing based on plaintiff's refusal to participate in the treatment programs. (D.I. 23 at 14) During the hearing, plaintiff claims that McMillan read written evidence provided by other inmates and that the evidence was not disclosed to plaintiff. (D.I. 23 at 14) Ultimately, plaintiff was found guilty and sentenced to twenty days in isolated confinement and the loss of ten days of earned good time credits. (D.I. 23 at 15) Plaintiff appealed the hearing decision, claiming that he did not receive a fair and impartial hearing because McMillan issued the original report, held the hearing, withheld written evidence, and made the final decision on appeal. (D.I. 23 at 24-25) On April 24, 2014, plaintiff wrote a letter to defendant Robert Coupe ("Coupe"), Commissioner,

requesting an investigation of the hearing process. (D.I. 23 at 16; D.I. 23, ex. 11) After receiving no response, plaintiff filed a § 1983 lawsuit on December 8, 2014. (D.I. 23 at 16)

## III. STANDARD OF REVIEW

Because the parties have referred to matters outside the pleadings,[2] defendants' motion to dismiss, or in the alternative, for summary judgment, shall be treated as a motion for summary judgment. *See* Fed. R. Civ. P. 12(d). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 n.10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Federal Kemper Life Assurance Co.,* 57 F.3d 300, 302 n.1 (3d Cir. 1995) (citations omitted). For a party to show that a fact is or is not genuinely disputed, that party must cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or show "that the materials cited do not establish the

_____

[2] For example, the parties have provided and referred to documentation of plaintiff's classification and reclassification reports, records of his disciplinary hearing, and correspondence between plaintiff and prison officials.

3

absence or presence of a genuine dispute, or that an adverse party cannot product admissible evidence to support the facts." Fed. R. Civ. P. 56(c)(1)(A) & (B).

If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita,* 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). In determining whether a genuine issue of material fact exists, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.,* 530 U.S. 133, 150 (2000). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pennsylvania Coal Ass'n v. Babbitt,* 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

## IV. DISCUSSION

### A. Plaintiff's Fifth and Fourteenth Amendment Due Process Claims

#### 1. Classification status

Analysis of plaintiff's due process claim begins with determining whether a constitutionally protected liberty or property interest exists. *See Sandin v. Conner*, 515

4

U.S. 472 (1995); *Hewitt v. Helms*, 459 U.S. 460 (1983). "Liberty interests protected by the Fourteenth Amendment may arise from two sources—the Due Process Clause itself and the laws of the States." *Hewitt v. Helms*, 459 U.S. at 466. States may create protected liberty interests with respect to prison inmates; however, these state-created "interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. at 484 (internal citations omitted). In evaluating plaintiff's due process claim, the court must determine whether the sanction rises to the level of atypical and significant hardship, and then review the relevant procedure to determine its sufficiency under the Due Process Clause.

Plaintiff can succeed under the Due Process Clause only if state law or regulation has created a constitutionally-protected liberty interest in an individual's classification status. However, this court has repeatedly determined that the DOC statutes and regulations do not provide prisoners with liberty or property interests protected by the Due Process Clause. *See Carrigan v. State of Delaware,* 957 F.Supp. 1376 (D. Del. 1997); *Jackson v. Brewington–Carr,* 1999 U.S. Dist. LEXIS 535 (D. Del. Jan. 15, 1999). More specifically, neither Delaware law nor DOC regulations create a liberty interest in a prisoner's classification within an institution. *See Eaton v. Danberg*, 545 F.Supp.2d at 399; *see also* 11. Del. C. § 6529(e). In fact, inmates have "no legitimate statutory or constitutional entitlement" to any particular classification even if a

new classification would cause that inmate to suffer a "grievous loss." *Moody v. Daggett,* 429 U.S. 78, 88 n.9 (1976).

Prison officials are afforded broad discretionary authority, as the "operation of a correctional institution is at best an extraordinarily difficult undertaking." *Wolff v. McDonnell,* 418 U.S. 539, 566 (1974). Hence, prison administrators are accorded wide-ranging deference in the adoption and execution of policies and practices that are needed to preserve internal order and to maintain institutional security. *Bell v. Wolfish,* 441 U.S. 520, 527 (1979). The classification of prisoners within the State prison system is among the "wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts." *Meachum,* 427 U.S. at 225. Furthermore, requiring inmate participation in treatment programs, including for sex offenders, is not an enhanced sentence or duplicative punishment. *See generally Abdul-Akbar v. Dept. of Corr.,* 910 F. Supp. 986, 1002 (D. Del. 1995). The Supreme Court has stated that, "[a]s long as the conditions or degree of confinement to which [a] prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Hewitt,* 459 U.S. 468 (quoting *Montanye v. Haymes,* 427 U.S. 236, 242 (1976)). *See also Sandin v. Conner,* 515 U.S. 472, 480 (1995).

Nothing in the record shows that plaintiff's conditions, such as mandatory participation in a treatment program and relocation to the treatment program center, imposed an "atypical or significant hardship on [him] in relation to the ordinary incidents of prison life," such that his due process rights were violated. Therefore, the court

6

concludes that plaintiff's classification, along with any consequential loss of privileges, did not constitute atypical and significant hardship, and was "within the normal limits or range of custody [his] conviction authorizes the State to impose." *Meachum v. Fano*, 427 U.S. 215, 225 (1976).

Next, the court assesses whether the classification procedure was sufficient under the Due Process Clause. Plaintiff argues that he should have been afforded greater due process protections before being classified as a sex offender.[3] However, in addition to the fact that prison officials are afforded significant discretion by both DOC's policies and Delaware law, DOC policy states that classification criteria includes, *inter alia*, consideration of the prisoner's criminal history. DOC *Policy Manual* 4.6 (2014), available at http://www.doc.delaware.gov/downloads/policies/policy_4-6.pdf.

Here, plaintiff was previously convicted of a sex offense. Even though the conviction was in 1983 and plaintiff is now serving a separate sentence, prison officials may consider a prisoner's criminal history when making an initial classification determination. The court concludes that the classification procedure was adequate to provide due process. Therefore, defendants' motion for summary judgment with respect to plaintiff's due process claim based on his classification status is granted.

## 2. Loss of earned good time credits

Plaintiff alleges that he has a liberty interest in keeping his good time credits. (D.I. 38 at 7) The Supreme Court has held that the Due Process Clause does not guarantee the right to earn or keep such credits. *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). A revocation of such credits cannot be considered an "atypical and

---

[3] Plaintiff's arguments are more relevant to reclassification absent a prior sexual offense and, as such, are not applicable here.

significant hardship" as required under *Sandin* and is not a deprivation of plaintiff's due process rights. *See Abdul-Akbar*, 910 F. Supp. at 1003. As plaintiff has no liberty interest in keeping his good time credits, the protections of the Fourteenth Amendment do not apply. Therefore, defendants' motion for summary judgment with respect to plaintiff's due process claim based on the loss of his good time credits is granted.

### 3. Lack of approval for work detail

For plaintiff to state a cognizable claim that he was deprived of employment opportunities without due process of law, he must have either a property or liberty interest in those opportunities. *James v. Quinlan,* 866 F.2d 627, 629 (3d Cir. 1989). The Due Process Clause does not by itself give plaintiff such a property or liberty interest. *See James,* 866 F.2d at 629–30; *Bulger v. United States Bureau of Prisons,* 65 F.3d 48, 50 & nn.3–4 (5th Cir.1995). Thus, plaintiff must demonstrate that such interests derive from some other source.

To establish a property or liberty interest deriving from some source other than the Due Process Clause, plaintiff must show either that he has a "legitimate claim of entitlement" to employment opportunities, *Board of Regents v. Roth,* 408 U.S. 564, 577 (1972), or that failing to have such opportunities constitutes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," *Sandin v. Conner,* 515 U.S. 472 (1995). However, Delaware law does not create a liberty interest in the right to participate in a work or education program. *See James v. Quinian*, 866 F.2d 627, 629-30 (3d Cir. 1989). Also, given that employment opportunities are discretionary opportunities that prison officials are not required to supply, plaintiff cannot argue that he has a "legitimate entitlement" to such opportunities or that the lack of such

8

opportunities creates "an atypical and significant hardship." *See James,* 866 F.2d at 629–30; *Bulger,* 65 F.3d 48, 49–50 & nn. 3–4 (5th Cir.1995); *see also Dutton v. Watson,* 1994 WL 164486 at *3 (Del. Super. Ct. April 28, 1994) (holding that no relevant Delaware statutes create a property or liberty interest in prison employment), *aff'd,* 659 A.2d 227 (Del. 1994). As plaintiff does not have a property or liberty interest in the opportunity for employment, he cannot state a valid claim for deprivation of such opportunity. *Clough v. State,* 686 A.2d 158, 159 (Del. 1996) (citing *James,* 866 F.2d at 629).

Therefore, defendants' motion for summary judgment is granted with respect to plaintiff's claim that his lack of approval for work detail was a violation of his due process rights.

### 4. Disciplinary hearing and subsequent appeal

The Due Process Clause does not protect a prisoner from confinement that is "within the normal limits or range of custody [his] conviction has authorized the State to impose." *Meachum v. Fano,* 427 U.S. 215, 225 (1976). A prison disciplinary hearing satisfies the Due Process Clause if the inmate is provided with: (1) written notice of the charges and not less than 24 hours to marshal the facts and prepare a defense for an appearance at the disciplinary hearing; (2) written statement by the fact finder as to the evidence relied on and the reasons for the disciplinary action; and (3) an opportunity to call witnesses and present documentary evidence in his defense when to do so will not be unduly hazardous to institutional safety or correctional goals. *See Wolff,* 418 U.S. at 563-66; *Griffin v. Spratt,* 969 F.2d 16, 19-20 (3d Cir. 1992).

Plaintiff received notice of his disciplinary hearing on March 19, 2014 (D.I. 23, ex. 7), two days before the scheduled hearing on March 21, 2014 (D.I. 23, ex. 1), satisfying the first *Wolff* factor. Plaintiff was given a written statement describing the rationale for the decision and the evidence relied upon, satisfying the second *Wolff* factor. Finally, plaintiff was given the opportunity to call witnesses and present documentary evidence, satisfying the third factor. (D.I. 23, ex. 7, 10, & 17; ex. 1, parts 1 & 2) Nothing in the record shows that plaintiff was not afforded a hearing in accordance with the Supreme Court's requirements.

Plaintiff asserts that he was denied a fair hearing from an impartial officer because the hearing officer was the same official (defendant McMillan) who issued the original disciplinary report and affirmed the hearing decision on appeal. (D.I. 23 at 24-25) In support of this claim, plaintiff provides a copy of the "Notice of Disciplinary Hearing – for Minor/Major Offense," which states that an inmate has the right to be heard by an impartial hearing officer who is not a witness to the incident in question, was not involved in preparation of the charge, or is otherwise biased against the inmate. (D.I. 23, ex. 14-15) However, as noted above, the DOC statutes and regulations do not provide prisoners with liberty or property interests protected by the Due Process Clause. *See Carrigan v. State of Delaware*, 957 F. Supp. 1376 (D. Del. 1997); *Jackson v. Brewington-Carr*, No. 97-270, 1999 U.S. Dist. LEXIS 535 (D. Del. Jan. 15, 1999). Therefore, even if plaintiff was not afforded the rights listed in that prison document,

plaintiff's claim still does not rise to the level of a constitutional violation.[4]  Because the process satisfied the factors from *Wolff*, constitutional due process was afforded.

Consequently, defendants' motion for summary judgment is granted pursuant to Fed. R. Civ. P. 56, with respect to plaintiff's claim that his due process rights were violated during the disciplinary hearing process.

## B. Plaintiff's Equal Protection Claim

Under the Equal Protection Clause, persons who are similarly situated should be treated in the same manner.  *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985).  To state an equal protection claim in a prison setting, an inmate "must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination . . . . He must also show that the disparity in treatment cannot survive the appropriate level of scrutiny, which, in a prison setting, means that [a plaintiff] must demonstrate that his treatment was not 'reasonably related to [any] legitimate penological interests.'"  *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005) (internal citation, quotation marks, and alterations omitted); *see Wilson v. Schillinger*, 761 F.2d 921, 929 (3d Cir. 1985).  Courts have consistently held that, in the absence of a fundamental right or a protected class, equal protection only requires that a regulation which results in unequal treatment of an inmate bear some rational relationship to a legitimate penological interest.  *See McGinnis v. Royster*, 410 U.S. 263 (1973); *Hodges v. Klein*, 562 F.2d 276 (3d Cir. 1977).

Plaintiff alleges that his right to equal protection was violated, but he does not specify the grounds for such claim in the complaint.  (D.I. 23 at 19)  He has failed to

---

[4] Plaintiff did file an appeal following the disciplinary hearing decision, which appeal was denied. (D.I. 23, ex. 17)

11

allege any different treatment than similarly situated inmates. He does not allege infringement of a fundamental right or that he is a member of a protected class. Accordingly, defendants' motion for summary judgment with respect to the discrimination/equal protection claim is granted.

## C. Plaintiff's Retaliation Claim

Courts have "recognized that retaliation claims by prisoners are especially 'prone to abuse.' Due to 'the ease with which retaliation claims may be fabricated, [they should be] view[ed] with skepticism and particular care.'" *Woods v. Goord, No. 01 Civ. 3255, 2002 WL 31296325, at *7* (S.D.N.Y. Oct. 10, 2002) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983); *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). Proof of retaliation requires that a plaintiff demonstrate: (1) he engaged in a protected activity; (2) he was subjected to adverse actions by a state actor; and (3) the protected activity was a substantial motivating factor in the state actor's decision to take adverse action. *Anderson v. Davila*, 125 F.3d 148, 160-61 (3d Cir. 1997) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977)).

Plaintiff alleges that the lack of approval for work detail was in retaliation for his refusal to participate in the required treatment programs. (D.I. 38 at 8) He claims that he has had no other disciplinary infractions since the original report by defendant McMillan and that he has the lowest security level within the prison. Plaintiff does not clearly identify the protected activity or retaliatory motive. Plaintiff identifies the adverse action as the lack of approval for work detail. *Id.* Construing his complaint liberally, the court interprets the protected activity as avoiding treatment, and the retaliatory motive as the prison officials' desire to punish him for non-conformity with the prison rules.

Plaintiff's complaint indicates that he was being punished for refusing to comply with the prison's rules requiring him to participate in a treatment program. Therefore, plaintiff fails to meet the first element of a retaliation claim (i.e., that he was exercising his constitutional rights). *See Fletcher v. Phelps*, 2012 WL 3150529 (D. Del. August 1, 2012) (elements of retaliation claim unsatisfied because plaintiff was not exercising his constitutional rights, but was being punished for violating prison disciplinary rules).

Given that plaintiff was not engaged in a protected activity, and that the decision-makers had the authority to classify and reclassify plaintiff based on a myriad of factors, including plaintiff's criminal history and refusal to participate in a required treatment program, the court concludes that plaintiff has not alleged facts sufficient to support his claim. Therefore, defendants' motion for summary judgment is granted with respect to plaintiff's claim that the defendants' failure to approve him for work detail was a retaliatory act.

## D. Plaintiff's Eighth Amendment Claim

### 1. Sex offender classification

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 32 (1993). However, in order to establish an Eighth Amendment violation, a plaintiff must allege that he has endured a sufficiently serious deprivation and that the defendant has acted with deliberate indifference to plaintiff's plight. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Thus, in order to prove that the conditions of his confinement violate the Eighth Amendment, plaintiff must satisfy a two-prong test that is both objective and subjective. *Id.*

13

Plaintiff must show: (1) that the deprivation was sufficiently serious, i.e., objectively harmful enough to establish a constitutional violation; and (2) that the prison official acted with a sufficiently culpable state of mind, i.e., deliberate indifference. *See Hudson v. McMillian*, 503 U.S. 1, 5-6 (1992). Serious harm will be found only when the conditions of confinement "have a mutually enforcing effect that produces the deprivation of a single identifiable human need such as food, warmth, or exercise," and "[n]othing so amorphous as 'overall conditions' can rise to the level of [such a violation] when no specific deprivation of a single human need exists." *Blizzard v. Watson*, 892 F. Supp. 587, 598 (D. Del. 1995) (citing *Wilson*, 501 U.S. at 303-04).

Plaintiff alleges that his Eighth Amendment rights were violated based on the decision to classify him as a sex offender. (D.I. 23 at 21) He does not allege any facts that would support an inference of serious harm insofar as serious harm requires deprivation of "the minimal civilized measure of life's necessities." *See Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997) (quoting *Young v. Quinlan*, 960 F.2d 351, 359 (3d Cir. 1992)). Furthermore, the classification system is a mechanism consistent with the DOC's goal to supervise the "treatment, rehabilitation, and restoration of offenders as useful, law-abiding citizens within the community." *Jordan v. Keve*, 387 F. Supp. 765 (D. Del. 1974) (citing *Morrissey*, 408 U.S. at 481). As such, prison officials' decision to require programs for inmates falls within the day-to-day management of prisons, an activity that is afforded deference by the courts. *Wolff*, 418 U.S. at 561-63. The court has previously found that participation in a program for sex offenders does not constitute an enhanced sentence or duplicative punishment. *See Getz v. Carroll*, 2001 WL 1617189 at \*2 (D. Del. Dec. 7, 2001). Therefore, defendants' motion for

summary judgment is granted with respect to plaintiff's Eighth Amendment claim based on the assertion that a greater sentence was imposed by being classified as a sex offender.

## 2. Verbal abuse and harassment

Verbal abuse and harassment do not rise to the level of a constitutional violation and are not actionable under § 1983. *See Murray v. Woodburn*, 809 F. Supp. 383, 384 (E.D. Pa. 1993); *see also McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001) (taunts and threats are not an Eighth Amendment violation); *Prisoners' Legal Ass'n v. Roberson*, 822 F. Supp. 185, 189 (D.N.J. 1993) (verbal harassment does not violate inmate's constitutional rights).

Plaintiff contends that he suffered severe verbal abuse, scorn, and threats from other inmates[5] as a result of the classification, amounting to an Eighth Amendment violation. (D.I. 23 at 10, 22-23) However, those allegations do not amount to a constitutional violation and are not actionable under § 1983. Therefore, defendants' motion for summary judgment with respect to plaintiff's Eighth Amendment claim that he suffered verbal abuse and harassment as a result of his classification status is granted.

## 3. Confinement conditions

A condition of confinement violates the Eighth Amendment only if it is so reprehensible as to be deemed inhumane under contemporary standards or such that it deprives an inmate of the minimal civilized measure of life's necessities. *See Hudson*, 503 U.S. at 8; *Wilson*, 501 U.S. at 298. An Eighth Amendment claim against a prison

---

[5] Furthermore, 42 U.S.C. § 1983 only applies to state actors and not to private actors. Therefore, plaintiff's allegation that private actors (i.e., other inmates) violated his Eighth Amendment rights is an invalid claim.

official must meet two requirements: (1) the deprivation alleged must be, objectively, sufficiently serious; and (2) the prison official must have been deliberately indifferent to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Regarding deprivation of outside yard access, and restrictions on showering and time spent outside his cell, the Third Circuit has held that "meaningful recreation 'is extremely important to the psychological and physical well-being of the inmates.'" *Peterkin v. Jeffes*, 855 F. 2d 1021, 1031 (3d Cir. 1988) (quoting *Spain v. Procunier*, 600 F. 2d 189, 199 (9th Cir. 1996) ("[d]eprivation of outdoor exercise violates Eighth Amendment rights of inmates confined to continuous and long-term segregation); *Patterson v. Mintzes*, 717 F.2d 284, 289 (6th Cir. 1983); *Campbell v. Cauthron*, 623 F.2d 503, 506-07 (8th Cir. 1980); *Kirby v. Blackledge*, 530 F.2d 583, 587 (4th Cir. 1976); *Loe v. Wilkinson*, 604 F. Supp. 130, 135 (M.D.Pa. 1984). However, the lack of exercise can only rise to the level of a constitutional violation "where movement is denied and muscles are allowed to atrophy, [and] the health of the individual is threatened." *Spain*, 600 F.2d at 199.

Plaintiff does not allege that he was denied recreation completely; rather, he only alleges that he was denied access to the outside yard during his isolated confinement. (D.I. 23 at 25) Indeed, nothing in the record sufficiently shows that plaintiff's deprivation rose to the level of deprivation of the "minimal civilized measure of life's necessities." *Fortune v. Hamberger*, 379 Fed. Appx. 116, 122 (3d Cir. 2010). *See, e.g., Williams v. Delo*, 49 F.3d 442, 444-47 (8th Cir. 1995) (holding no Eighth Amendment violation where prisoner was placed in a strip cell without clothes, the water in the cell was turned off and the mattress removed, and the prisoner's bedding, clothing legal mail, and

hygienic supplies were withheld). Moreover, with respect to plaintiff's allegations of overcrowded cells (D.I. 23 at 6) and sleeping on a thin mattress on the floor (D.I. 23 at 8), overcrowding is an unfortunate but inevitable result of our prison system. As is well established, it is peculiarly within the province of correctional officials, based on their expertise, to determine whether conditions are related to a legitimate government interest, and the court should give deference to the correctional officials' opinions unless it is shown that they have blatantly exaggerated. *See Bell v. Wolfish*, 441 U.S. at 547-48. Therefore, the court concludes that plaintiff's confinement conditions do not rise to the level of an Eighth Amendment violation.

Consequently, defendants' motion for summary judgment is granted with respect to plaintiff's claim that his Eighth Amendment rights were violated as a result of his confinement conditions.

### 4. Registering as a sex offender with the State upon release

Plaintiff alleges that a prison official who is not a defendant in this case told him that, as a result of his classification as a sex offender within the institution, he is required to register with the State upon his release. (D.I. 23 at 21) Plaintiff asserts that this amounts to an Eighth Amendment violation because it is cruel and unusual punishment to be identified as a sex offender in society. *Id.* Defendants assert that plaintiff is not required to register under Delaware law upon his release. (D.I. 39 at 7) Defendants also provide a letter from Inmate Classification Administrator Bill Evans affirming the same. (D.I. 36, ex. I)

Even if plaintiff is correct in asserting that receiving a sex offender classification in prison requires him to register as a sex offender under Delaware law upon his

release, the fact remains that, regardless of the consequences in the outside world, the prison has the authority to classify inmates according to the prison rules. *See generally Abdul-Akbar*, 910 F. Supp. at 1002. Thus, plaintiff has no constitutional basis for his claim that his classification status amounts to an Eighth Amendment violation. Therefore, defendants' motion for summary judgment is granted with respect to plaintiff's claim that requiring registration as a sex offender upon his release constitutes an Eighth Amendment violation.

### E. Plaintiff's Claims Based on Failure to Supervise and Failure to Investigate

#### 1. Failure to supervise

Liability in a § 1983 action cannot be predicated solely on the operation of respondeat superior. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, a "defendant in a civil rights action must have personal involvement in the alleged wrongs." *Id.* Furthermore, a plaintiff can hold a supervisor liable for failure to supervise, even if the supervisor is not directly involved, only if the supervisor has shown deliberate indifference to the plight of the person involved. *Carte v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999). That is to say, "[i]n order for a supervisory official to be held liable for a subordinate's constitutional tort, the official must either be the moving force behind the constitutional violation or exhibit deliberate indifference to the plight of the person deprived." *Pair v. Danberg*, No. 08-458 WL 4570537 at *2 (D. Del. Oct. 14, 2008) (internal quotations and citations omitted). A plaintiff setting forth a claim for supervisory liability would need to prove: (1) existing policy created an unreasonable risk of constitutional injury; (2) the supervisor was aware of the potential for this unreasonable risk; (3) the supervisor was indifferent to the

risk; and (4) injury resulted from the policy or practice. *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989); *see also Heggenmiller v. Edna Mahan Corr. Inst.*, 128 Fed. Appx. 240 (3d Cir. 2005) (not published). It is not enough to argue that the alleged injury would not have occurred if the supervisor had "done more." *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001). Instead, a plaintiff must identify the specific acts or omissions of the supervisor that evidence deliberate indifference and establish a link between the act or omission and the ultimate injury. *Id.*

Here, defendants Faulkner and Johnson are named for failure to supervise on the basis that, due to their capacity as treatment program counselors, they are responsible for inmate-supervisors' harassment of plaintiff within the treatment program, including placing notes under plaintiff's door and humiliating him based on his classification status as a sex offender. (D.I. 23 at 10, 22-23) However, nothing in the record shows that these defendants had any personal involvement in the alleged constitutional violations against plaintiff; rather, all liability is predicated on respondeat superior. Plaintiff has failed to allege that any supervisor was aware of the potential for this unreasonable risk, that any supervisor was indifferent to the risk, or that injury resulted from the policy or practice. Therefore, defendants' motion for summary judgment is granted with respect to plaintiff's claim that his Eighth Amendment rights were violated by defendants because they were responsible for the actions of inmate-supervisors within the treatment program.

### 2. Failure to investigate

Although the filing of a prison grievance is a constitutionally protected activity, and prisoners have a constitutional right to seek redress of grievances as part of their right of access to the courts, that right is not compromised by the failure of prison officials to address those grievances. *Robinson v. Taylor*, 204, Fed.Appx. 155, 156-57 (3d Cir. 2006); *Booth v. King*, 346 F.Supp.2d 751, 761 (E.D. Pa. 2004). Inmates do not have a constitutionally protected right to a grievance procedure. *Burnside v. Moser*, 138 Fed. Appx. 414, 416 (3d Cir. 2005) (holding that failure of prison officials to process administrative grievance was not a constitutional violation). Moreover, the existence of a grievance procedure does not grant inmates any substantive constitutional rights. *Hoover v. Watson*, 886 F.Supp. 410, 418-19 (D. Del.), *aff'd* 74 F.3d 1226 (3d Cir. 1995). Therefore, the failure to investigate a grievance does not raise a constitutional issue. *Hurley v. Blevins*, no. Civ. A. 6:04CV368, 2005 WL 997317 (E.D. Tex. Mar. 28, 2005).

Plaintiff objects to the adequacy of the appeals process by asserting that defendants Coupe, Phelps, Morgan, and McMillan failed to investigate his claims. (D.I. 23 at 22-23) Under Third Circuit law, he has no constitutional basis to do so. Therefore, defendants' motion for summary judgment is granted with respect to plaintiff's claim that his Eighth Amendment rights were violated by defendants' failure to investigate his complaints.

## F. Plaintiff's Sixth Amendment Claim

Plaintiff claims that his Sixth Amendment rights were violated. (D.I. 23 at 19-20) Plaintiff did not clearly specify the grounds for such claim in the complaint. Construing his complaint liberally, the court interprets two alternative bases for this claim.

First, plaintiff cites 11 Del. C. § 4121(b) in support of his assertion that he should have been afforded counsel. (D.I. 23) However, 11 Del. C. § 4121(b) refers to community notification of an individual who has registered as a sex offender with the State, as is required upon release after serving a sentence imposed from a conviction of a sexual offense. This provision is inapplicable here, where plaintiff is not serving such a sentence and is not a registered sex offender.

Second, if plaintiff relies on his Sixth Amendment rights more generally with respect to his classification as a sex offender by prison officials, his claim is likewise without merit because the Sixth Amendment is not applicable in this context. *See United States v. Zucker*, 161 U.S. 475, 481 (1896) (noting that the Sixth Amendment is limited to criminal proceedings); *Hannah v. Larche*, 363 U.S. 420, 440 n.16 (1960) (affirming the Sixth Amendment's applicability only to criminal proceedings). Because the DOC's routine classification procedure is not a criminal proceeding, the Sixth Amendment does not apply.

Therefore, on either ground, defendants' motion for summary judgment is granted with respect to plaintiff's claim that his Sixth Amendment rights were violated.

## V. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (D.I. 35) is granted. An order shall issue.